Yes, ma'am. My name is Nell Brown from the Federal Defenders in Portland for the Petitioner, and I would like to reserve two minutes of my time for rebuttal. All right. Good morning. Good morning. Trial counsel in this case failed to raise an available meritorious in limine challenge to the state's expert testimony that vouched for the alleged victim's credibility in a case that boiled down to a he said, she said credibility contest. This case is about counsel's failure to research and know the law applicable to his client's case when the prevailing professional norm all over the state of Oregon at the time of trial was to challenge the same type of expert testimony in sexual abuse cases until the Oregon Supreme Court took up this issue. But at the time, there wasn't anything exactly on point. Is that correct? There were cases from the Oregon Supreme Court that were not exactly on point, and there were cases from the Oregon Court of Appeals that were not exactly on point. Well, weren't the Court of Appeal cases essentially supporting the fact that these kind of experts could be admitted? The Court of Appeals had ruled that they were admissible, but not on the facts of this case. Sanchez-Cruz was the Court of Appeals' last decision in the area. That case was pro-defense in that it found that this type of evidence was scientific evidence, which the Court of Appeals had previously not found. And that case involved a different set of facts. There, the Court found... Well, so essentially, you're saying that defense counsel had to make arguments that were sufficiently foreshadowed in the existing law. And what's your best Ninth Circuit cases that support your position? Well, I actually don't think it's just that it was foreshadowed. Here we have record evidence that attorneys around the state were making these arguments. There's a motion in the record from another 2006 trial where another attorney raised these issues. He raised them under the Supreme Court of Oregon's case in Brown, Milbrad, Marrington. Is that really the standard that... Counsel, counsel, could you cite your best evidence of the, what you just said about the defense bar?  Sorry. That's okay. The excerpt of record at page 448 contains an affidavit of an attorney, Matt McHenry, explaining that attorneys around the state were raising challenges here. Attorney Susan Reese submitted an affidavit, which is in the record, neither of which were discussed by the post-conviction court. That's at excerpt of record, page 476 to 82, Judge Fischer. And the sample motion in limine is found in the excerpt of record at page 449 to 55. And that motion in limine involved similar facts as here. The key difference between Sanchez-Cruz in this case is that there was no physical evidence to corroborate the expert's opinion. Sanchez-Cruz ruled squarely that where there's physical evidence that's consistent with the testimony is admissible. But after Sanchez-Cruz, we can see that attorneys all around the state were using that case to their benefit. They said this is scientific evidence. The state has to show a foundation. And in this case, where there is no physical evidence, attorneys would have argued and did argue in other cases that there was no scientific validity to that diagnosis. It was nothing more . . . Well, one of the things, though, that you don't discuss is it does not appear that you And given that our court is bound by that standard, how do we find that there is no reasonable argument that trial counsel here satisfied Strickland? This case falls outside of AEDPA's double deference here because the post-conviction court in this case failed to address the record evidence of the prevailing professional . . . All right. But you're not saying it wasn't . . . but it's controlled by . . . how are you getting . . . it's after AEDPA was . . . AEDPA applies, but it's outside of AEDPA because, one, the post-conviction court's analysis failing to grapple with the evidence in the record here of the prevailing professional norm is contrary to Strickland, which says an attorney's conduct is judged according to whether it's reasonable under the prevailing professional norm. The post-conviction court was contrary to Strickland when it failed to address how this attorney's conduct squared with the prevailing professional norm. In addition . . . All right. If we don't agree with you . . . Oh, go ahead. I'm sorry, but the prevailing professional norm was that everybody else was challenging this? I don't think . . . I mean, you're requiring that every attorney has to be at the leading edge of challenging what the current law is or they're ineffective. Well, that's the thing here. It's not the leading edge. Attorneys all over the state, not every attorney, obviously we wouldn't be here if every attorney was raising it, but competent attorneys who did their research would look at Sanchez-Cruz and see that it's obviously distinguishing . . . And it would be incompetent to accept that the state of the law at the time was that this was admissible and therefore you didn't challenge it? That's the level of incompetence? I think that's a narrow view of the law at the time. Oregon Supreme Court is the highest court of the state. The Supreme Court in Oregon had ruled very clearly in Keller in 1993, well before Sanchez-Cruz, and Merrington in 2003 after Sanchez-Cruz, that this type of evidence was scientific evidence and that it also needed . . . it was inadmissible. There, for example, in Keller, a sexual abuse evaluator, a physician, just like the expert here, testified that based on a bunch of factors, the details, the consistency . . . The case that made it clear, Lopoli? I think Keller makes it clear. All right, but those people that were making the arguments proactively, they weren't winning. They were just preserving the issue. Lopoli was the one that put the nail in the coffin, right? They were making the arguments . . . It's like leading up to Apprendi. There were people that were objecting before Apprendi on the Supreme Court, but Apprendi was the one that made certain . . . so you're saying . . . But attorneys were raising it, and that's how we got Apprendi. These attorneys were raising it based on Keller. They were raising it based on Merrington. Okay, wait. All right. All right. Let's . . . if we want to have a good discussion on this, I understand what your perspective is, but we're asking you to wrestle with, if not every attorney was raising it, is that . . . is the standard under AEDPA is no reasonable? It was unreasonable for the attorney in this case. What he said is, I didn't think it was objectionable, I didn't think there was an objection available. Had he researched the law, had he read Keller, had he read Sanchez-Cruz, he would have seen very clearly that he could have written a motion just like the motion that's in the excerpt of record at page 449, which . . . But those people that were writing those motions then, were they winning, or were they preserving the issue? They were preserving the issue, and had Mr. Hall's counsel in this case done that exact thing, he would have received relief when Southward was decided, because his case would have still been pending on appeal, and he would have had a preserved issue raised by his appellate attorney. That's very . . . So, I'm not entirely crazy when I'm saying that Southward and Lopoli clarified all of this? I would say they clarified that the Supreme Court meant what it said earlier in Keller and other cases. There's a very long, clear line of Oregon Supreme Court cases addressing evidence just like this, saying that an expert cannot testify to the credibility of another witness. So your position is not that he would have raised the issue and necessarily won, but that he failed to preserve the objection. You know, as a trial court judge, I get people who file objections all the time to challenge the Ninth Circuit standards, saying the Ninth Circuit hasn't gotten it right, and you need to revisit this. They're not going to win, because I have to follow precedent, but they preserve the objection. I can't understand the idea that I would find that any other counsel who did not raise that objection, which was going to be a loser on its face, would be incompetent or inefficient or unreasonable by not having raised an objection that's contrary to the law. That doesn't seem to fall to a standard that is below competent counsel. Well, this is the most damaging evidence. I see I'm running into my rebuttal time, I think. Do you want to save that? You can. I would like to. Okay. That's fine. Okay. Should I answer the question? You can, after response, and if she needs additional answers from you, I'll allow that. Thank you. Good morning. Good morning. Good morning. May it please the Court, Pinesh Shah for the State. We ask the Court to affirm the District Court's judgment. In our view, Ed Pedefrans requires rejecting Petitioner's claims here. His first claim fails because no Supreme Court case has ever held that Strickland requires trial counsel to anticipate changes in the law and raise futile objections at the trial court. In the absence of such a case, perhaps reasonable jurists can disagree as to whether Strickland requires counsel to make such anticipatory objections, but at a minimum, it is not unreasonable for a court to conclude that Strickland does not require counsel to anticipate even foreseeable changes in the law. And we don't concede that this is foreseeable, but even if it were, we know that reasonable jurists can disagree as to whether counsel needs to raise even foreseeable arguments because the Eleventh Circuit has held in pits that to satisfy the standard of reasonableness, counsel did not need to raise a Batson challenge, even at a time when other Federal circuits outside the jurisdiction of that trial had already recognized a Batson challenge. The Supreme Court had, in a denial of cert, said, we intend to address this issue in the future, and many counsel, just like the counsel whose affidavits were submitted in the record here, had been raising those arguments. So, I mean, I guess in making her best argument, she presents a number of attorney affidavits indicating that the prevailing professional norm amongst the Oregon defense bar at the time was to challenge this sort of testimony, and the intermediate court cases that you cite, Sanchez, Cruz, and Wilson, were widely viewed as inconsistent with State Supreme Court precedents. So how do you reconcile this evidence with your claim that trial counsel was reasonably acting under then-binding precedent? I'm just making — I'm summarizing her argument. MR. STEINWALD. Yes, Your Honor.  The Oregon Supreme Court is applying Oregon Supreme Court law. That's what the Oregon Supreme Court held in Southern and Lupoli. But the Oregon Court of Appeals is binding on trial courts, and, you know, the Oregon Supreme Court is a court of discretionary review. So as I understand Petitioner's argument, all reasonable counsel need to raise an argument that is — that the trial court under law that's binding on the trial court, meaning the Court of Appeals, has to reject, because the Court of Appeals, in reaching those decisions, had addressed the Supreme Court cases. As it turns out, it had misread them. But I don't think that at the trial court, counsel could say the Court of Appeals got it wrong because the Court of Appeals had addressed the very cases that Petitioner contends required a different result. So in that way, it was binding because the trial court had no authority to reach a different conclusion. And so then I guess Petitioner is saying that, yes, that objection would have failed, but then Petitioner could have appealed to the Court of Appeals, where I suppose Petitioner could have asked the Court of Appeals to revisit its then-binding case law, which I'm not sure it would have done, and then the next step would have been to seek discretionary review from the Oregon Supreme Court. And to expect a trial counsel to do that seems not consistent with what we expect reasonable counsel to do, because at the end of the day, trial counsel is looking to win a trial. You know? Well, would the result be different under double... Counsel, could I... Yeah, go ahead. ... ask a question? The people who were represented by the attorneys who did lodge a protective objection, under Oregon law, would they then now be able to take advantage of Southern? If, in fact, if they had lodged this objection and had appealed it to the Court of Appeals, pre-Southern they would have lost. And then if they tried to raise that argument post-conviction, that claim would be barred because they had already — it had already been resolved on the merits. And so in a lot of ways, I feel like — I feel as though this argument would lead to sort of a perverse result where Petitioner gets a worse result if his counsel raises the objection and pursues it pre-Southern than somebody whose counsel doesn't raise it and waits, you know, however long Petitioner waited here until after Southern was decided and tries to take advantage of it later in the day. Is Southern retrospectively applicable under Oregon law? It is inasmuch as if there were a Petitioner who raised a state post-conviction — a claim for post-conviction relief for a trial that happened before Southern and they were able to file their claim in a timely fashion, it is my understanding that Southern would allow — would allow relief — well, I should take that back, Your Honor, because that's a claim of trial corridor that you can't raise in post-conviction. So the only way it could arise is if somebody had a trial that happened in the time between — if someone had a trial before Southern was decided and then took an appeal up after Southern was decided. And in that way, yes, it would be retroactive. I think that — I hope that answers your question, Your Honor. It does, Your Honor. So counsel for Petitioner — for Appellant said that the double deference of AEDPA does not apply here. Can you respond — would this be a different case if it were not an AEDPA case? I don't think so. I think — so first to respond to counsel's argument that AEDPA deference doesn't apply because the trial court didn't address the affidavits submitted by other counsel. I did not see that argument in the briefs, so I'm not sure if that's properly presented at oral argument. I understood the argument in the briefs to be AEDPA deference doesn't apply because the State Post-Conviction Court misapplied Strickland. And we say that the Court didn't misapply Strickland inasmuch as Strickland doesn't require anticipating changes in the law. To answer more directly your question, Your Honor, would it be a different case? It would — I think that under AEDPA, this is — this is clearly — this case clearly requires affirmance. If it were not under AEDPA, I still think that reasonable counsel should not be required to anticipate changes in the law, but I do believe that reasonable jurors could disagree on that point. You know, counsel points to some cases from out of the circuit. I think there's one from Indiana, maybe from the Seventh Circuit, where reasonably foreseeable changes in the law were held to be — the Court held that reasonable counsel should have foreseen that. Of course, we have the Eleventh Circuit saying exactly the opposite. So under double deference, reasonable jurors can disagree. But if it were a single layer of deference and we were only looking at Strickland, then I think — again, I think some reasonable — a reasonable juror could say counsel need not anticipate even foreseeable objections, but reasonable jurors could also hold, as the Seventh Circuit has at times, that foreseeable objections must be raised by reasonable counsel. But we dispute, again, whether this was foreseeable because, in fact, the Oregon Court of Appeals had — had repeatedly rejected these arguments. And there was a period of about 20 years between the cases that — that counsel says foreshadowed Southern and when Southern was actually applied. Do you want to address in the remaining time the Griffin-Doyle error? Yes. Contention? Yes, Your Honor. So — so — so first of all, in our view, this is not clearly improper because a close look at the record shows that although — although the prosecutor was perhaps inartful in presenting his rebuttal argument, he was referring not to Petitioner's silence in response to police questioning, but rather Petitioner's silence or rather failure to deny the allegations when he talked to his family on jail telephone calls. That was — that was the evidence that — that the State had presented and was relying upon. At a minimum, it was a close question, as trial counsel stated in his deposition, that he viewed this as close. In his view, it seemed more — more akin to silence when talking to a friend as opposed to compelled silence in the — in the form of custody. And in that situation, where it's a close call and trial counsel is put in a position at closing argument of making a decision at that time, because — because, honestly, the only time he can make an objection is at that time, trial counsel can reasonably conclude that it's not in his client's best interest to raise that objection during closing argument, especially when — when the available relief will not be a mistrial, because I think it's clear that there was other evidence to suggest that Petitioner did deny. Does it matter — the defendant testified, correct? Correct. In trial? I believe that's correct, yes. And didn't the defendant take that issue on? Didn't the defendant talk about the call and he was — said, these are my jail calls, I was worried about making bail? So is that a factor to consider in whether counsel's decision was reasonable? I think so, because, you know, if — if, in fact, the jury were to misunderstand the prosecutor's argument to mean that — that it should infer guilt from the fact that defendant never — or Petitioner never denied it, the fact is there was ample evidence in the record that Petitioner was denying. He took the stand and denied. He explained exactly what was going on in those phone calls. And there was evidence from other witnesses, both States — I think many of the States witnesses — Was that on direct or was that on cross? Do you remember? What was what on direct? When — when he was explaining what he was doing in the calls. I do not remember, Your Honor. But regardless, in our view, because there was ample evidence that Petitioner had denied these allegations, this sort of — if this — if the argument was improper, at most it required a curative instruction, it would not have supported a mistrial. And counsel made clear that he was not interested in a curative instruction. And in that case, there's really no reason for him to object. All right. Thank you. We ask you to affirm. Thank you. Okay. I'll give you two minutes. Thank you, Your Honor. The first point I'd like to make is that the issue here was obviously foreseeable because attorneys were foreseeing it. The record evidence is that attorneys were raising challenges to evidence in cases like this that involved no physical evidence to corroborate the expert's diagnosis or opinion testimony. So it was foreseeable. Attorneys foresaw this, whether it was foretold in the law or just obvious because there were conflicts in the cases. The attorneys knew this was a fruitful area for challenges. And the attorney in this case simply didn't do his research. The Supreme Court has said one of trial counsel's obligations is . . . You know he didn't do . . . I mean, maybe he did look at it and decided it was not something he wanted to take on. That's not supported by the record. The attorney in this case testified at length. There's over a hundred pages of his testimony. And what he says is he didn't believe there was an objection available. He clearly wanted to keep this evidence out. He says that his priority number one for his defense theory was to limit these experts' testimony. And he didn't think he could keep it out, so he wasn't aware of the legal challenges. So he was going to do what he called pounding and hard cross-examination. It's very clear from his testimony that had he been able to keep this stuff out, he would have. Of course, Your Honor said the trial court would have let this in under the Oregon Court of Appeals precedent. I think there's a way to distinguish Sanchez-Cruz, so there could have been an argument that the trial court wouldn't have done that. Or that the Court of Appeals would have, on the facts of this case, said nope, Sanchez-Cruz is distinguishable. In this case, the evidence should not have come in. But... Well, part of your argument was that he could have been the case. If he had objected and preserved his objection, he might have been the case that they reviewed. And I could see a little more weight to your argument, obviously, if a parallel case was already pending in the Court of Appeals and it was under consideration that you might be more inclined to find that an attorney in that circumstance should make sure he's before the reviewing court. But on the expectation that it might be taken up and it might be reversed, again, I think you're setting an awfully high bar for counsel for what's just a question of competent performance. In this case, the record evidence is that attorneys believe the Supreme Court would take the issue up. They believe that the conflicts between Keller and Merrington and the Oregon Court of Appeals decisions were so stark and so clear. And it is obvious. If you read those cases, you see those distinctions very clearly. And so the attorneys say in their affidavits, there's affidavits that were put in for the Martinez issue as well as the citations that I gave Judge Fischer for the stuff that was in this record before the state court, where the attorneys say, we knew the Supreme Court would eventually take this up to clarify this area because it was causing a lot of consternation in the lower courts. All right. I've given you additional time. But I want to make sure Judge Fischer goes on. Could I get a question? Yes, please go ahead. Okay. Would you address my question about what happens to the people who did preserve it? Counsel for the state says it would have been worse off. I disagree. Mr. Sprague, who's the gentleman whose motion is in the record, his attorney preserved the pre-trial in limine motion, making the arguments about these cases. And when he was on appeal, his case was contemporaneous with Mr. Hall's. They were both 2007 trials. And when the case went on to appeal, his case was held for the Southard decision. And he ended up getting relief in the form of a new trial. All right. But was he on direct appeal or was he on habeas? He was on direct appeal and Mr. Hall was too. Their cases were on the same trajectory. Mr. Hall's case would not have required any retroactivity. His case, had his attorney preserved it and it been raised by direct appellate counsel as a preserved issue, there's no doubt that his case would have been decided under Southard. He would have had appellate relief in the form of a new trial, just like Mr. Sprague, whose motion is in the record. That really is virtually impossible to dispute based on the timing of this case. So there's no retroactivity problem that co-counsel, opposing counsel mentioned. So would it be a correct statement that not everyone would get relief just because it was preserved, but there is a group of people that did get relief? Yes. Okay. Judge Fischer, did you have any more questions? No. Okay. Thank you both for your arguments. This matter will be submitted.
judges: Fisher, Callahan, Bencivengo